IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Firas Munir Ayoubi (#2012-1207168), Plaintiff, | ) ) ) | Case No: 13 C 8983 |
| v. | ) ) ) | Judge: Charles R. Norgle, Sr. |
| Tom Dart, et. al, Defendants. | ) ) ) | |

## ORDER

Defendants' motion to dismiss [32] is denied. Plaintiff's motion for leave to file a second amended complaint [39] is granted. The second amended complaint may proceed with its claims of deliberate indifference and negligence against the Defendants listed therein, all of whom have already been served. Defendants are given 30 days from the date of this order to answer the second amended complaint or otherwise plead. The other claims in the second amended complaint are dismissed. Plaintiff's motion for a copy of the Court's Local Rules without payment [34] is granted, and the Clerk is directed to send Plaintiff a copy. Plaintiff's motion for attorney representation [36] is denied without prejudice. A status hearing is set for April 10, 2015, at 10:00 a.m.

## STATEMENT

Plaintiff Firas Ayoubi, a pretrial detainee at the Cook County Jail, filed this civil rights action against Cook County Sheriff Tom Dart, Cook County Department of Corrections Executive Director Murphy, Superintendents Menella, Queen, and Everheart, and Cermak Director Dr. Kahn. Plaintiff alleges that, in December of 2012, inmates with contagious diseases, who had been labeled 'quarantine/isolation," were housed in Division 5 along with Plaintiff and other inmates. Plaintiff states that the Defendants were aware that contagious inmates were being housed with non-contagious inmates; that he was not moved despite his requests; and that he contracted an illness, which caused high fever and extensive coughing for two weeks.

The Court previously allowed Plaintiff's amended complaint to proceed with claims of deliberate indifference. The Court, however, did not address the amended complaint's additional state-law claims of assault and battery.

Currently before the Court is Defendants' motion to dismiss the state-law claims. They contend: (1) the state-law claims are time-barred, (2) the amended complaint's allegations do not support claims of assault and battery, and (3) the claims are barred by the Illinois Tort Immunities Act. Plaintiff both responded to the motion to dismiss and submitted a second amended complaint. The second amended complaint provides more details about the December 2012 transfer of contagious inmates into Plaintiff's jail division, as well as each Defendant's involvement. Plaintiff again asserts state-law claims of assault and battery, and he adds three more state-law claims:

negligence, intentional infliction of emotional distress, and a claim against the Defendants' performance bonds. The Defendants have neither replied to Plaintiff's response to the motion to dismiss nor addressed Plaintiff's motion for leave to file a second amended complaint.

**Defendants' Motion to Dismiss and Plaintiff's Second Amended Complaint:**

An amended complaint, if allowed, moots a motion to dismiss a prior complaint. *See Daniel v. Cook County*, No. 12 C 9049, 2014 WL 334635 at *3 (N.D. Ill. Jan. 20, 2014); *see also Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998) (an amended complaint supersedes a prior complaint). Because Plaintiff filed his second amended complaint more than "21 days after service of [Defendants'] motion under Rule 12(b)," he must obtain leave to file it. Fed. R. Civ. P. 15(a)(1)(B). The Court grants such leave based on the following considerations: (1) the second amended complaint adds no Defendants but, instead, clarifies Plaintiff's claims against each Defendant; (2) the additional state-law claims are based upon the same facts giving rise to Plaintiff's other claims, (3) there appear to be no bad faith or dilatory motives by Plaintiff, and (4) allowing the second amended complaint should cause no undue prejudice to Defendants (though this case began at the end of 2013, it does not appear that the parties are near the end of discovery). *See* Fed. R. Civ. P. 15(a)(2) (a "court should freely give leave [to amend] when justice so requires"); *King v. Kramer*, 763 F.3d 635, 643-44 (7th Cir. 2014) (factors to consider when granting leave to amend are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party").

Having allowed the second amended complaint, the Court must conduct an initial review in accordance with 28 U.S.C. 1915A. Under Section 1915A, courts are required to screen all prisoners' § 1983 complaints against a governmental officer or employee and dismiss the complaint, or any claim therein, if the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a party who is immune from such relief. *See Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

As indicated above, the second amended complaint names the following Defendants: Cook County Sheriff Tom Dart, Cook County Department of Corrections Executive Director Murphy, Superintendents Menella, Queen, and Everheart, and Cermak Director Dr. Kahn. Plaintiff again alleges that, in December of 2012, inmates with contagious diseases and who had been labeled "quarantine/isolation" were transferred to Division 5 along where Plaintiff and other uninfected inmates were housed. Plaintiff states that the Defendants were aware that contagious and uninfected inmates were using the same water fountains, phones, tables, toilets, showers, and air; that he was not moved despite his requests; and that he contracted an illness, which caused high fever and extreme coughing for two weeks. According to Plaintiff, Dr. Kahn and Superintendents Manella and Everheart oversaw the placement of contagious inmates in Plaintiff's division, Superintendent Queen and Director Murphy authorized this transfer of contagious inmates into Plaintiff's division, and Sheriff Dart, as well as the other Defendants, were aware of the transfer because a physician's assistant documented it and referred it to the Defendants. Based on these allegations, Plaintiff asserts constitutional claims of deliberate indifference and state-law claims of battery, assault, negligence, intentional infliction of emotional distress, and a claim against the Defendants' performance bonds.

**Deliberate Indifference:**

As noted in the Court's prior initial-review orders, Plaintiff's allegations support claims of deliberate indifference against the Defendants. To state a deliberate indifference claim, a plaintiff must allege facts demonstrating both: (1) an objectively substantial risk of serious harm (which Plaintiff alleges), and (2) subjective knowledge by state officials of that risk but a refusal to take reasonable action to address it (which Plaintiff also alleges). *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 829 (7th Cir. 2009); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("exposure of inmates to a serious, communicable disease" can amount to a constitutional violation). The second amended complaint may thus proceed with its claims of deliberate indifference against the Defendants.

**Battery and Assault:**

Plaintiff's state-law battery claim cannot proceed. "Under Illinois law, battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" *Chelios v. Heavener*, 520 F.3d 678, 692-93 (7th Cir. 2008) (quoting *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. 5th Dis. 1995)); *see also Kling v. Landry*, 686 N.E.2d 33, 41 (Ill. App. 2d Dist. 1997) ("to state a cause of action for intentional battery, a plaintiff must allege a willful touching of another person without the consent of the person who is touched"). Plaintiff's allegations indicate no touching by any of the Defendants or even by a contagious inmate. His battery claim is dismissed.

Nor do Plaintiff's allegations support an Illinois claim of assault. "Assault necessarily involves a reasonable apprehension of an imminent battery." *Censke v. United States*, 27 F.Supp.3d 920, 932 (N.D. Ill. 2014) (citing *Rosenberg v. Packerland Packing Co., Inc.*, 370 N.E.2d 1235, 1238 (Ill. App. 1st Dist.1977); *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) ("Ever since the fourteenth century, assault whether civil or criminal has involved (1) a threatening *gesture*, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery." (emphasis in original)). Just as Plaintiff alleges no unauthorized touching, he also alleges no threat of an unauthorized touching. The second amended complaint states no claim of assault, and this claim is dismissed.

**Negligence:**

Plaintiff's negligence claim, however, may proceed. "In Illinois, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, [that he] breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Barfield v. Keller*, No. 15 C 099, 2015 WL 753722 at *2 (S.D. Ill. Feb. 20, 2015) (Rosenstengel, J.) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). "Under Illinois law, jailers must exercise ordinary and reasonable care for the preservation of their prisoners' health and life." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500 at *4 (N.D. Ill. Apr. 9, 2012) (Kendall, J.) (quoting *Freeman v. Fairman*, 916 F. Supp. 786, 792 (N.D. Ill. 1996); *see also Mitchell v. Elrod*, 655 N.E.2d 1104, 1111 (Ill. App. 1st Dist. 1995) ("Jailers are obliged to provide a prisoner with reasonable care."). Plaintiff's allegations that jail officers knowingly housed contagious, quarantined inmates with uninfected inmates indicate

that Defendants breached their duty to provide reasonable care for Plaintiff. He may thus proceed with his claim of negligence against the Defendants.

The Court notes Defendants' motion to dismiss contention that Plaintiff's negligence claims are negated by the Illinois Tort Immunity Act, 745 ILCS 10/2-202. The Act shields public employees from liability for acts committed "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202; *see also Chelios v. Heavener*, 520 F.3d 678, 692-93 (7th Cir. 2008). "Although willful and wanton conduct 'consists of more than mere inadvertence, incompetence, or unskillfulness,' it need not be an 'intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others.'" *Chelios*, 520 F.3d at 693 (quoting Carter v. Chi. Police Officers, 165 F.3d 1071, 1081 (7th Cir. 1998)). It is unclear if the Act, for all intents and purposes, transforms Plaintiff's state-law negligence claim into one of deliberate indifference (the requisite showing for immunity not to apply appears the same as the second element of a deliberate-indifference claim). But even if Plaintiff must demonstrate "willful and wanton conduct" similar to a showing of deliberate indifference, such a requirement does not bar his negligence claim, but rather, simply raises the burden of establishing liability for such a claim. Just as Plaintiff may proceed with his claims of deliberate indifference, he may also proceed with his state-law negligence claims.

The Court also notes Defendants' contention that Plaintiff's state-law claims are time-barred, given that they have a statute of limitations period of one year. However, because Plaintiff's second amended complaint's claim of negligence "stems from the same 'conduct, transaction, or occurrence' as was alleged in the original complaint," the second amended complaint relates back to the filing date of a prior complaint alleging the same facts. *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir.1996); Fed. R. Civ. P. 15(c)(1)(B); *see also Luckett v. Conlan*, 561 F. Supp.2d 970, 975 (N.D. Ill. 2008). Plaintiff's negligence claim thus appears timely.

**Intentional Infliction of Emotional Distress:**

As to Plaintiff's state-law claim of intentional infliction of emotional distress ("IIED"), to state such a claim, "a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress or knew there was a high probability his conduct would inflict such distress; and (3) the conduct did cause severe emotional distress." *Moore v. Abernathy*, No. 11 C 3487, 2015 WL 222685 at *4 (N.D. Ill. Jan. 15, 2015) (Lee, J.) (citing *Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). Although Plaintiff asserts that Defendants deliberately placed contagious inmates in Plaintiff's division of the jail (Plaintiff specifies neither what illnesses the inmates had nor what Plaintiff contracted), such conduct alone does not support a IIED claim.

"Extreme and outrageous conduct is that which goes 'beyond all bounds of decency and [is] considered intolerable in a civilized community.'" *Lopez*, 464 F.3d at 720 (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir.2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)); *see also McGrath v. Fahey*, 533 N.E.2d 806, 809-10 (Ill. 1988) (setting out examples of extreme and outrageous conduct); *Lauria v. Donahue*, 438 F. Supp.2d 131, 142 (E.D. N.Y. 2006)

(allegations that employer knowingly exposed employee to tuberculosis, which employee contracted, did not indicate extreme and outrageous conduct under New York law). Furthermore, "[t]he emotional distress must be severe. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Posey v. Miro*, No. 11 C 5660, 2014 WL 3843940 at *5 (N.D. Ill. Aug. 5, 2014) (quoting *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. 1st Dist. 1999)).

**Claims Against Performance Bonds:**

Plaintiff's claims against the performance bonds of the Defendants are also dismissed. The Court is unaware of Defendants being covered by performance bonds and Plaintiff's allegations of the existence of such bonds are at best conlcusory. "[M]ere labels and conclusions" are insufficient to satisfy the federal notice pleading requirement, and a complaint must provide enough information "to raise a plaintiff's right to relief above the speculative level." *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiff may have intended to bring a state-law indemnification claim against Cook County. *See* 745 ILCS 10/9–102 ("A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of employment is liable in the manner provided in this Article."). While the county may be a necessary party for indemnification purposes if Plaintiff were bringing an official capacity claim against the sheriff, all of Plaintiff's claims are against the Defendants in their individual capacities for their own involvement and participation with housing contaminated and uninfected inmates together. For such claims, if Plaintiff succeeds, the county should be responsible for paying any settlement or judgment pursuant to 745 ILCS 10/9-102. Plaintiff may seek to bring an indemnification claim if the county refuses to pay; however, it is not an indispensable party that must be joined at this time. *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 636-37 (7th Cir. 2009).

**Plaintiff's Request for Counsel:**

Finally, Plaintiff seeks the recruitment of an attorney to represent him. He states he contacted several firms, he has only some college education, his case involves several different legal claims, and the legal and factual issues are complex as they involve medical issues which may require expert testimony. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); see also *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). However, a court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013).

When a pro se litigant submits a request for assistance of counsel, a court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). If this requirement is met, the court must then examine "whether the difficulty of the case--factually and legally--exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether

the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. Such a determination also includes consideration of the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

After considering the above factors, this Court concludes recruiting counsel at this time is not warranted. Plaintiff appears to have met the first requirement as he states that he contacted several law firms but was unable to obtain representation on his own. However, contrary to Plaintiff's contentions, the legal and factual issues of this case are not overly complex. As stated above, Plaintiff alleges that the Defendants knowingly housed contagious inmates in Plaintiff's division, causing him to contract an illness. Furthermore, as stated in this order, the only claims of this case are deliberate indifference to a substantial risk of serious harm to Plaintiff and negligence. Though Plaintiff sates he has only some college education, his detailed complaints and pleadings well set out the facts needed to prove his claims. Plaintiff goes so far as to describe each Defendant's responsibilities and role with the transfer of contagious inmates into Plaintiff's division. Plaintiff's pleadings indicate that he is very capable of conducting discovery to gather information and documents to establish the facts supporting his claims. If Plaintiff has not already done so, he should forward interrogatories (written questions) for each Defendant and requests for production of documents to counsel for Defendants. *See* Fed. R. Civ. P. 33 and 34. The Court notes Plaintiff's statement that he suffers attention deficit disorder; however, such a condition has clearly not affected his ability to submit coherent and well reasoned pleadings, nor his ability to file at least 13 actions in this Court in the past 15 months. Plaintiff's motion for attorney representation is thus denied. The denial is without prejudice. Should the case proceed to a point where assistance of counsel is appropriate, Plaintiff may resubmit and the Court may revisit this request.

Date: 3-16-15

CHARLES R. NORGLE, SR.
UNITED STATES DISTRICT JUDGE