# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Firas M. Ayoubi (#2012-1207168), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 8983 |
| v. ) | |
| ) | Judge Charles R. Norgle |
| Tom Dart, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Firas Ayoubi, a pretrial detainee confined at the Cook County Jail, brought this 42 U.S.C. § 1983 action against six jail officials and Cook County ("Defendants") asserting they acted with deliberate indifference to Plaintiff's health when inmates contagious with the flu were housed in the same tier as Plaintiff and other uninfected inmates for a period of five days. Plaintiff became ill with a high fever, night sweats, chills, and uncontrollable coughing for two weeks as a result. He contends that Defendants failed to take adequate precautions to ensure that uninfected inmates did not become ill. Currently before the Court is Defendants' motion for summary judgment, to which Plaintiff has responded.

Also before the Court is Plaintiff's motion to compel discovery, wherein he states additional discovery is needed. Defendants have responded to Plaintiff's motion. For the reasons stated herein, the Court grants Defendants' motion for summary judgment and denies Plaintiff's discovery motion. This case is dismissed. The dismissal is without prejudice to Plaintiff seeking to bring his state-law claims of negligence in state court. The case in this Court, however, is terminated.

## BACKGROUND[1]

Plaintiff entered the Cook County Jail on December 7, 2012. (Dkt. #126, Defs.' SOF ¶ 1; Dkt. #139, Pl. Resp. ¶ 1.) At that time, Tom Dart was Cook County Sheriff; Connie Menella was an official for Cermak Health Services (the healthcare provider for jail inmates); John Murphy was acting Executive Director of the Cook County Department of Corrections; Erica Queen was Superintendent of Records, Receiving, and Classification; Tyrone Everheart was Superintendent of Division 5; and Dr. Marghoob Khan was an attending physician of Division 5. (*Id.* at ¶ 2.)

When Plaintiff entered the jail, he was first housed in Division 3 for three days. (*Id.* at ¶ 41.) From December 10, 2012 to January 15, 2013, Plaintiff was housed in Division 5, Tier 2A. (*Id.* at ¶ 4.) For a period of five days, from December 27, 2012 to January 2, 2013, cells on the upper level of Tier 2A were used to house inmates with influenza-like illness ("ILI") symptoms. (*Id.* at 8.) The inmates were designated as quarantine or isolation. (*Id.*) Plaintiff was never housed in a cell with an isolation or quarantine inmate. (*Id.* at ¶ 21.) Although the record is unclear as to when isolation/quarantine inmates and non-isolation/quarantine inmates were in the dayroom, Plaintiff was never in the dayroom at the same time as isolation/quarantine inmates. (*Id.* at ¶ 22.)

Cermak had policies in place specifically addressing the housing of inmates with influenza. (*Id.* at ¶¶ 11-13.) Inmates who exhibited flu-like symptoms that were contagious by droplet transmission (meaning the illness could be spread through coughing and sneezing) were deemed isolation inmates and could share a cell with another isolation inmate, but not a non-isolation

---

[1] The facts are taken from the parties' N.D. Ill. Local Rule 56.1 Statements of Material Facts ("SOF"). Courts may decide a summary judgment motion based on a factual record established by the parties' Rule 56.1 Statements. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). Defendants submitted a SOF (Dkt. #126), to which Plaintiff responded (Dkt. #139). To the extent a party failed to respond adequately to a properly submitted fact statement, the Court may consider the statement admitted. *See* Local Rule 56. 1(b)(3)(C); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012).

inmate. (*Id.* at ¶ 12.) Isolation inmates could be housed on the same tier as general population inmates, but isolation inmates were supposed to have their own dayroom and wear masks. (*Id.*) Quarantine inmates were inmates who did not exhibit flu symptoms (in particular droplet transmissions) but who may have been exposed to a symptomatic inmate. (*Id.* at ¶ 13.) The same rules applicable to isolation inmates (being housed in a cell with only similarly-designated inmates; using their own dayroom; wearing masks) applied to quarantine inmates. (*Id.*) Plaintiff does not contest that the above-described policies existed. He does contest, however, if and how those policies were enforced. (Dkt. #139, ¶ 13.)

The policies are unclear as to whether quarantine and isolation inmates were supposed to have their own dayroom or only their own dayroom time. What is clear is that Plaintiff and isolation/quarantine inmates used the same dayroom but at different times. (Dkt. #126, ¶ 22) (citing Dkt. #126, Exh. B, Pl. Depo., pg. 43.) When isolation/quarantine inmates were in the dayroom, Plaintiff was in his cell. (Dkt. #126, ¶ 23; Dkt. #139, ¶ 23, citing Dkt. #138, Exh. A, Pl. Depo. at 57) (Plaintiff explains that his cell door is solid steel with a chuckhole in the middle; no glass or other covering is over the chuckhole.) Plaintiff had a toilet in his cell that was not used by any quarantined/isolation inmates. (Dkt. #126, ¶ 25.) Although quarantined/isolation inmates were never in the dayroom or other places at the same time as non-quarantined/isolation inmates, they all used and touched the same surfaces. (Dkt. #126, ¶ 26; Dkt. #139, ¶ 26.)

Between December 27, 2012 and January 2, 2013, jail sanitation crews sanitized Tier 2A four times. They also sanitized the tier on January 3, 2013, after the isolation/quarantine inmates were moved off the tier. (Dkt. #126, ¶ 28) (citing Exh. D). Plaintiff does not contest whether sanitation crews were on his tier several times during the five-day period isolation/quarantine

3

inmates were there, but he questions what sanitizing an area means, i.e., whether all items and surfaces of common use were wiped down and how well. (Dkt. #139, ¶ 28.)

Plaintiff became sick about a week after isolation/quarantine inmates were moved onto his tier. He suffered the following: very high fever, extreme uncontrollable coughing, difficulty walking, difficulty talking, uncontrollable shivering, dizziness, and sweating. (Dkt. #126 ¶ 33, citing Exh. B, Pl. Depo. at 120, 122); (Dkt. #139 ¶ 33, citing #140 Pl. Aff. ¶ 13.) Plaintiff was sick for approximately two weeks. (Dkt. #126, ¶ 34, citing Exh. B, Pl. Depo. at 123 ("It felt like I was sick approximately two weeks or so."); Dkt. #140, ¶ 13.) Plaintiff does not contend he was denied medical attention while he was sick. (Dkt. #126, ¶ 39; Dkt. #139, ¶ 39.)

Before Plaintiff was moved to Division 5, he complained he was feeling ill. (Dkt. #126, ¶ 42; Dkt. #139, ¶ 42.) Plaintiff submitted a health request slip four days after he transferred from Division 3 to Division 5 complaining of: "dizziness, nausea, can't sleep, night sweats, chills." (Dkt. #126, ¶ 45, citing Exh. C.) Plaintiff contends his Division 3 illness was different than his Division 5 illness he had a week after his transfer. According to Plaintiff, his symptoms in Division 3 were from cold cell temperatures. He states he began to feel better after the transfer. (Dkt. #139, ¶ 42.)

Cook County Jail had a grievance system in 2012 and 2013. (Dkt. #126 ¶ 55.) Plaintiff filed a grievance on December 30, 2012, complaining that he was being exposed to isolation/quarantine inmates' illness and requesting that either he or isolation/quarantine inmates be moved out of Tier 2A. (*Id.* at ¶ 52; Dkt. #139, ¶ 52.) The grievance was construed as a non-grievance request, which was denied. (Dkt. #126, ¶ 58; Dkt. #139, ¶ 58.) Plaintiff received a response on January 8, 2013, which informed him that isolation/quarantine inmates had been moved off Tier 2A. (Dkt. #126, ¶ 53.) Plaintiff did not appeal. (*Id.*) He attempted to appeal, but officers

4

refused to accept it because an appeal is unavailable from a response to a request. (Dkt. #139, ¶ 53.) According to Defendants, when a grievance is converted into a request and is then denied, an inmate is supposed to submit another grievance and begin the process again. (Dkt. #126, ¶ 58.)

## DISCUSSION

Defendants' motion for summary judgment argues: (1) Plaintiff cannot establish that he was exposed to or suffered a serious health condition; (2) he fails to present evidence that any Defendant was personally involved with housing isolation/quarantine inmates in Tier 2A or had personal knowledge that these inmates and Plaintiff were being housed in the same tier; (3) Plaintiff cannot establish that Defendants were negligent under state law not only because they are protected by the Illinois Tort Immunity Act but also because the policies about separating inmates with the flu from uninfected inmates demonstrate they fulfilled their duty of care; (4) Plaintiff puts forth no evidence of an unconstitutional custom or policy; and (5) Plaintiff failed to exhaust administrative remedies.

**Summary Judgment Standard:**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. The Court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The Court may not weigh conflicting evidence . . . or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *see also Tolan*, 13 S. Ct. at 1866.

5

The parties seeking summary judgment have the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 4s51, 460 (7th Cir. 2010). If the parties moving for summary judgment demonstrate the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

**Deliberate Indifference:**

As a pretrial detainee, Plaintiff's constitutional rights derive from the Due Process Clause of the Fourteenth Amendment, which prohibits deliberate indifference to his serious medical needs. *See Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *Pittman v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014). The Fourteenth Amendment's deliberate indifference "standard is essentially the same as [the deliberate indifference standard under] the Eighth Amendment's prohibition against cruel and unusual punishment, which applies to convicted prisoners." *Burton*, 805 F.3d at 784. Courts often refer to Eighth Amendment deliberate indifference cases when addressing similar claims for pretrial detainees, and vice-versa. *Id.*, citing *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013). To prove a constitutional violation of deliberate indifference, Plaintiff must be able to establish: (1) he faced a substantial risk of an objectively serious medical

condition; and (2) Defendants acted with deliberate indifference to that risk. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).[1]

An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010), quoting *Hayes*, 546 F.3d at 522. "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton*, 593 F.3d at 620, citing *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

The Court allowed Plaintiff's allegations about the flu to proceed on initial review. But now that the parties have conducted discovery (much discovery) it is clear that Plaintiff's illness, though unfortunate, was not sufficiently serious for constitutional purposes. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 n.7 (7th Cir. 1997) (the Seventh Circuit has "caution[ed] that, given the liberal standards governing federal notice pleading (particularly in conjunction with the leniency with which pro se complaints must be evaluated), the 'seriousness' determination will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition").

Plaintiff's deliberate indifference claims are based on him catching the flu, which consisted of: two weeks of high fever, uncontrollable coughing, sweats, chills, and difficulty walking and

---

[1] The Court notes that Plaintiff's claim is not the typical claim of deliberate indifference to a serious medical need. Plaintiff does not assert that he received inadequate treatment for his medical condition. Rather, his claim is that he was exposed to inmates with the flu, which he contracted, and that inadequate precautions were taken to protect him from the illness. Arguably, Plaintiff's claim could be considered as asserting that his confinement conditions were unconstitutional. "'Whether one characterizes [the claim] . . . as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (addressing a claim of exposure to environmental tobacco smoke and its potential for future harm).

7

speaking. (Dkt. #126, Exh. B, Pl. Depo., pg. 122.) Plaintiff described it as a "very elevated" flu with "a cough which I couldn't control, . . . it hurt my lower back and lungs. I felt very dizzy, not very mobile. I had a hard time walking. I had a hard time speaking. I had a very high fever. I was sweating. . . . I had chills as well. It was a very, very bad feeling." (*Id.*) He "was sick approximately two weeks or so." (*Id.* at 123.) There were no lasting residual effects. (*Id.* at 126.)

Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez*, 111 F.3d at 1372, quoting *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (a prison medical staff's refusal to treat minor "ailments for which many people who are not in prison do not seek medical attention. . . does not by its refusal violate the Constitution"). Other courts have found "that 'cold and flu-like symptoms' and minor respiratory ailments" do not present "serious medical needs that posed a substantial risk of harm." *Severin v. Orleans Par. Crim. Sheriff Off.*, CIV.A. 15-283, 2015 WL 6128665 at *11 (E.D. La. Oct. 16, 2015) (Wilkinson, M.J.); *Caldwell v. Bentley*, 2:11CV975-MHT WO, 2015 WL 1198608 at *29 (M.D. Ala. Mar. 16, 2015) (Thompson, J.) ("chest congestion, body aches and fever, symptoms . . . attributed to the flu" did not indicate an objectively serious medical condition for a constitutional deliberate indifference claim); *Becker v. Fannin County, Ga.*, 2:09-CV-00047-RWS, 2014 WL 4925684 at *8 (N.D. Ga. Sept. 30, 2014) (Story, J.) ("Symptoms that 'seemed at most flu-like' did not satisfy the seriousness requirement of a deliberate indifference claim."), *aff'd sub nom. Becker v. Newman*, 646 Fed. Appx. 788 (11th Cir. 2016) (unpublished); *Liggins v. Barnett*, No. 4–00–CV–90080, 2001 WL 737551 at *6 (S.D. Iowa May 15, 2001) (Bremer, M.J.) ("The court has found no case in which a plaintiff suffering from flu-like symptoms . . . has been held to have had a serious medical need.").

The Court notes that Plaintiff described his illness as "a lot worse than a common cold," (Dkt. #126, Exh. B, Pl. Depo. at 120), and that jail officials considered the flu serious enough to isolate inmates contagious with it. Nevertheless, the flu and Plaintiff's symptoms at best indicate an illness for "which many people who are not in prison do not seek medical attention." *Cooper*, 97 F.3d at 916. Construing the record evidence in a light most favorable to Plaintiff, he cannot establish a constitutional violation with regard to his exposure to and contraction of his January 2013 illness.

The record thus demonstrates that Plaintiff cannot establish that his illness was objectively serious for a constitutional claim of deliberate indifference. "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Summary judgment is thus granted for Plaintiff's claim of deliberate indifference against the Defendants in their individual capacities.

Summary judgment is also warranted for Plaintiff's official capacity claims of an unconstitutional custom or policy. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010) (a claim of an unconstitutional custom or policy does not exist where "there is no underlying constitutional violation"). The Court acknowledges that jail policies related to keeping uninfected inmates safe from communicable diseases may be challenged on constitutional grounds. *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (sharing a prison cell with a five-pack-a-day smoker); *Johnson v. Epps*, 479 Fed. Appx. 583, 592 (5th Cir. 2012) (unpublished) (prison barbers using clippers without sanitizing them after clippers were used on prisoners with Hepatitis or AIDS); *Butler v. Fletcher*,

9

465 F.3d 340, 345 (8th Cir. 2006) (tuberculosis); *Corwin v. Madison County Jail*, No. 14-3173, 2014 WL 6845859 at *2 (C.D. Ill. Dec. 4, 2014) (Meyerscough, J.) (HepatitisC); *Ward v. Schrubbe*, No. 07-CV-820, 2009 WL 675761 at *8 (E.D. Wis. Mar. 13, 2009) (Stadtmueller, J.) (MRSA). Plaintiff's case, however, simply does not rise to the level of constitutional violation.

The Court need not, and does not, address: whether Defendants' housing and other policies with respect to inmates contagious with the flu sufficiently protect uninfected inmates, whether those policies were followed for the five-day period isolation/quarantine inmates were housed near Plaintiff; whether sanitation crews sufficiently sanitized the dayroom and other common areas; or whether any Defendant was personally involved with the housing of inmates with the flu and the sanitizing of their living areas.[2] Such issues may support Plaintiff's state-law negligence claims.

However, without his deliberate indifference claims, the Court relinquishes jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Fuqua v. SVOX AG*, 754 F.3d 397, 401 (7th Cir. 2014), citing *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)"); *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 941 (7th Cir. 2012). Plaintiff should have a year to file his negligence claims in state court. *See* 735 ILCS 5/13-217 (Illinois law allows a claimant one year to refile in state court a claim dismissed "for lack of jurisdiction" by a federal court); *Srail v. Village of Lisle*, No. 07 C 2617, 2008 WL 4876865, 9 (N.D. Ill. 2008) (Kennelly, J.);

---

[2] Nor will the Court address whether Plaintiff failed to exhaust administrative remedies by not filing another grievance when his attempt to appeal the denial of his grievance that had been converted into a request was refused. The Court notes, however, that some judges in this district have held that the conversion of grievances into requests, the denial of which are not appealable, rendered the grievance process unavailable. *See Shelby v. Dart*, No. 14 C 2419, 2015 WL 8329971 at **5-6 (N.D. Ill. Dec. 9, 2015) (Kendall, J.); *Harper v. Dart*, No. 14 C 01237, 2015 WL 3918944 at **4-5 (N.D. Ill. June 24, 2015) (Chang, J.).

*Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 636-37 (Ill. 1997) (refusal by federal court to exercise supplemental jurisdiction over a pendent state-law claim after dismissal of federal claims is considered a dismissal for lack of jurisdiction).

Lastly, Plaintiff's motion for additional discovery must be denied. The Court invited Plaintiff to state in his response to the summary judgment motion the issues for which he needed additional discovery. He responded in only general terms, similar to his discovery requests throughout this case. He states he needs more discovery to show: he was placed at risk; the jail and Cermak policies are unconstitutional; Defendants were personally involved; and the jail's sanitation methods were not enough. (Dkt. #139, pg. 18-19.) The Court has considered Defendants' response to Plaintiff's motion (Dkt. #143), as well as the numerous documents attached to both Plaintiff's and Defendants' pleadings. The Court is satisfied that sufficient discovery has been conducted for Plaintiff to respond to, and for the Court to rule on, Defendants' motion for summary judgment.

## CONCLUSION

For the reasons stated in this opinion, Defendants' motion for summary judgment (Dkt. #125) is granted. This case is dismissed. The dismissal is without prejudice to Plaintiff seeking to bring his negligence claims in state court. The case in this Court, however, is terminated. Plaintiff's motion seeking to conduct additional discovery [Dkt. #133] is denied.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because

11

three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Rule 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Rule 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Rule 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTER: *Charles Norgle*

Charles R. Norgle
United States District Judge

DATE: 1-17-17